The undersigned have reviewed the decision based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
***********
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing as
 STIPULATIONS
1. The date of the claimed and asserted negligent act giving rise to this claim was February 9, 1996.
2. The employees of the North Carolina Department of Correction involved with regard to this claim were Tommy King and John Williams, who were acting in the scope and course of their employment at the time in question.
***********
Based upon all of the competent, credible, and convincing evidence of record and reasonable inferences drawn therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. On February 9, 1996, Harold Browder was an inmate committed to the custody of the North Carolina Department of Correction. He had been assigned to and housed at the Tillery Correctional Center in Halifax County for approximately one month.
2. Tillery is a minimum custody, level one prison. Many of the prisoners work on the Caledonia prison farm. Among the population at Tillery are a number of high risk, minimum custody prisoners who have been promoted to the minimum custody level within the past year.
3. The grounds of Tillery Prison inside the perimeter fence are divided into two yards. Each yard contains a number of buildings, including the main dormitory buildings where prisoners sleep. Inside Yard #1 are the kitchen building and the Number 1 Dormitory building.
4. Prisoners at Tillery are allowed access to the yards from early morning until about nine o'clock in the evening. Sometime before 9:00 p.m., an announcement is made that each inmate must return to his respective dormitory building. At 9:00 p.m. the doors of the dormitory are locked down. All inmates are required to be inside. In the winter months, prisoners have free access to the yard and grounds after the sun has set and it becomes dark, as the year-round lock down time is 9:00 p.m.
5. The prison yard is lighted by high power lights set on poles at the corners of the fences surrounding each yard. The lights provide illumination for most of the open area of the yards. According to one prison officer, it is difficult to distinguish faces observed from a spot across the yard. There are small areas where buildings or other structures block the lights, naturally creating shadows or dark areas where it is difficult to observe activities.
6. It is relatively unusual in North Carolina prisons for prisoners to be allowed outside dormitory buildings at night. According to Tommy King, Assistant Superintendent for Custody and Operations, only one other prison, Piedmont Correctional Institution, allows prisoners to be in an enclosed courtyard after nightfall.
7. There are less restrictive rules at Tillery for the purpose of accommodating prisoners who work on the prison farm. The prisoners have long hours in the field and would have little or no outside recreation time if lockdown were before dark in the winter. Prison officials do not want to deprive the farm workers of yard recreation. Extended yard privileges are thus provided for all prisoners, rather than for just those who work long hours.
8. On the evening of February 9, 1996, at approximately 8:00 p.m., plaintiff went outside and began walking alone around the yard. He followed a path or track which circled inside the perimeter fence and was a traditional route for prisoners who wanted to walk around the yard.
9. As plaintiff was walking, another inmate, Alejandro Trujillo, whom plaintiff knew from his incarceration period at Yadkin Prison, called to him. Trujillo came over and began walking with him. Another prisoner whom plaintiff did not know, but who was subsequently identified as Jorge Zalizar, accompanied Trujillo. Soon afterward, yet another prisoner joined the group. Plaintiff was unable to positively identify that person.
10. The men walked, following the path, past the back of the kitchen building. A compressor and a stack of large kitchen garbage cans were located there. Because of this, the rear of the kitchen building had several poorly lit areas. As the group passed, Trujillo stopped plaintiff and demanded that he perform sexual favors. When plaintiff refused and started to walk on, one of the group grabbed him and bashed his head against the wall of the kitchen building. Another of the assailants pulled a shank (a prison-made weapon fashioned from a piece of metal and a wooden handle) and held it against plaintiff's neck. While a third inmate watched to make sure that no officers were approaching, Trujillo pulled plaintiff's pants down and had forcible anal intercourse with him.
11. Following the assault, the three assailants warned plaintiff against reporting the incident and told him to walk with them back to the dormitory. Plaintiff did so, but after entering the dormitory he proceeded directly through it, out the opposite door, and across the prison yard in search of a correctional officer. Plaintiff encountered Sgt. Moss near the gate leading outside to the administration building. Moss and plaintiff went through the gate, and plaintiff related the details of the assault.
12. Sgt. Moss called the prison nurse, who examined plaintiff. The nurse observed rectal bleeding, and confirmed a sexual assault. Plaintiff was subsequently taken to a nearby hospital where he was examined utilizing a rape kit. There was positive evidence on anal entry with blood around plaintiff's anus, as well as trauma to the head with an abrasion on his forehead. The next day plaintiff gave a full witness statement about the incident. He identified two of the three assailants by photograph. Plaintiff made a tentative identification of the third inmate, but later determined that he was wrong.
13. Inmates Trujillo and Zalazar were charged with a prison disciplinary infraction of the sexual assault, found guilty by a disciplinary committee, and punished with solitary confinement and loss of good time.
14. Since the assault, plaintiff has been transferred to various prisons at distant locations throughout the state. At each facility he has been approached by other prisoners who have heard of the incident and who seek sexual favors from him. Plaintiff has also been accosted and accused of being a snitch for reporting the incident to prison authorities. One of those encounters resulted in plaintiff being hit in the head with a rock, causing fractures to his facial bones.
15. Plaintiff introduced four exhibits (Plaintiff's Exhibits 3, 4, 5 6) which are reports of altercations at Tillery.
 a. Exhibit #3 is the report of a fight which occurred December 18, 1994, at about 6:35 p.m., in the prison yard, behind the dormitory building.
 b. Exhibit #4 is the report of an assault which occurred on February 11, 1996 at 8:35 p.m. on the prison yard behind a dormitory building.
 c. Exhibit #5 is the report of an assault or fight which occurred on February 25, 1995 at 7:50 p.m., on the prison yard near a dormitory building.
 d. Exhibit #6 is a report of an assault which occurred January 31, 1996 at 5:20 p.m. on the prison yard, behind a dormitory building.
16. The four incidents all occurred in the months of December, January or February, three of the darker months of the year. Three of the incidents occurred the winter before plaintiff was assaulted. One occurred the same winter, ten days before plaintiff was assaulted.
17. According to Superintendent King, in the normal course of prison administration, all of the incident reports would cross his desk and be reviewed by him.
18. Plaintiff reported that a prison-made knife or shank was used in the assault. However, no shank was ever found by prison officers.
19. At least twelve correctional officers were on duty in the prison at the time of the assault. Ten of those officers were assigned to posts inside the dormitories or the other buildings, and two were assigned to the prison yard.
20. Although the yards are large and although correctional officials are required to supervise extensive areas and buildings, there was no negligence on the part of Superintendent King in supervising the prison or on the part of Sgt. Moss in carrying out his duties in the prison yard.
21. Superintendent King and the twelve correctional officers on duty February 9, 1996 were not negligent in fulfilling their job requirements nor were they negligent in their duties concerning running the prison.
22. No shank was ever found. The guards were not negligent in failing to prevent an assault on plaintiff.
23. Prison officials were not negligent in failing to detect a weapon. It is possible that even with due diligence of prison officials, some inmates will still be able to make, obtain or keep weapons.
24. The level of supervision in the yard was adequate and in accordance with prison regulations.
25. The lighting was not inadequate at Tillery Prison. Most areas of the prison yard were well lit, even at night. Further, plaintiff knew about the conditions of the yard prior to deciding to walk after dark.
***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. Plaintiff has failed to sufficiently meet his burden of establishing actual negligence at the time complained of by any named or unnamed employee, agent, servant or representative of defendant North Carolina Department of Correction, proximately resulting in the assault and rape for which this damage claim has been filed. N.C. Gen. Stat. Section 291 et seq.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 ORDER
1. Plaintiff's claim for damages must be and hereby is DENIED.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___ day of ________, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
JHB:kws